UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSHUA D. FRANKLIN,

        Plaintiff,

v.                                          Case No. 3:22-cv-758-BJD-LLL

FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,

        Defendants.
_____

## ORDER OF DISMISSAL WITHOUT PREJUDICE

Plaintiff, Joshua D. Franklin, an inmate of the Florida penal system, initiated this action pro se by filing a complaint for the violation of civil rights (Doc. 1; Compl.) and a motion to proceed in forma pauperis (Doc. 2). In his complaint, Plaintiff alleges the COVID-19 vaccination, which he received at Hamilton Correctional Institution (HCI) in early 2021, has "somehow . . . programmed [his] DNA," causing him to feel pain. Compl. at 4. He also asserts that "radiation is being pumped into [his] body" in his close management cell. Id. at 5. Plaintiff further complains that when he was housed at the Leon County Jail in September 2021, he was "asked to place [his] eyes on a rectal scan machine," which has caused him to feel pain and hear voices that are

"diabolical and disrespectful."[1] Id. at 4-5. He says it feels like "hundreds of people are having a nonstop party . . . in [his] head." Id. at 5.

Plaintiff contends he has suffered violations of the Fourth Amendment (invasion of privacy), the Eighth Amendment (cruel and unusual punishment), and the Fourteenth Amendment (due process and equal protection). Id. at 3. He also asserts a claim for medical malpractice in the administration of the COVID-19 vaccine. Id. The intended Defendants are unclear. At different places in his complaint, Plaintiff identifies the following as Defendants: Mark Inch and Ricky Nixon,[2] the former and current Secretaries of the Florida Department of Corrections (FDOC); the Warden of HCI; the Warden of Florida State Prison; Corizon; and the FDOC. Id. at 1-3, 5.

As relief, Plaintiff seeks compensatory and punitive damages from the FDOC and Corizon, and injunctive relief from the Wardens in the form of "[d]issolution of DR's and CMI recommendations." Id. at 5. He also wants to be transferred to a hospital or back to general population.[3] Id. Finally, Plaintiff

---

[1] Plaintiff makes similar allegations in his complaint filed in case number 3:22-cv-687-BJD-LLL.

[2] Plaintiff identifies a Defendant with the last name "Nixon," though the current Secretary's last name is Dixon.

[3] Generally, courts will not interfere in matters of prison administration, including an inmate's custody status or location of confinement. See McKune v. Lile, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); Barfield v. Brierton, 883 F.2d 923, 936 (11th Cir. 1989) ("[I]nmates usually possess no constitutional right to be housed at

2

wants the "Director of Corizon (Florida) [to] be investigated for conspiracy to commit murder." Id. Plaintiff believes the COVID-19 vaccine has killed over 500,000 people. Id.

The Prison Litigation Reform Act (PLRA) requires a district court to dismiss a complaint if the court determines the action is frivolous, malicious, or fails to state a claim on which relief may be granted. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1). With respect to whether a complaint "fails to state a claim on which relief may be granted," the language of the PLRA mirrors the language of Rule 12(b)(6), Federal Rules of Civil Procedure, so courts apply the same standard in both contexts. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). See also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not suffice. Id. (quoting Twombly, 550 U.S. at 555). Moreover, a complaint must "contain either direct or inferential allegations respecting all

---

one prison over another."). See also Bell v. Wolfish, 441 U.S. 520, 547-48 (1979) ("[T]he operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches . . . not the Judicial.").

the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quoting In re Plywood Antitrust Litig., 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)). In reviewing a complaint, a court must accept the plaintiff's allegations as true, liberally construing those by a plaintiff proceeding pro se, but need not accept as true legal conclusions. Iqbal, 556 U.S. at 678.

Unlike Rule 12(b)(6), the PLRA "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Examples of "clearly baseless" contentions are those that can be described as "fantastic or delusional." Id.

Plaintiff's complaint is subject to dismissal under the PLRA because he fails to "state a claim to relief that is plausible on its face," and some of his allegations can be described as fantastic.[4] See Iqbal, 556 U.S. at 678; Denton, 504 U.S. at 32. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that "a person" acting under the color of state law deprived him of a right

---

[4] Examples of Plaintiff's fantastic assertions are (1) the COVID-19 vaccine programmed his DNA, (2) radiation is being pumped into his cell, and (3) he was asked to place his eyes in a rectal scan machine. See Compl. at 4-5.

4

secured under the United States Constitution or federal law. See 42 U.S.C. § 1983. Generally, under § 1983, a claim against a supervisory official must be premised on something more than a theory of respondeat superior or vicarious liability. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), abrogated in part on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010). See also Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) ("It is axiomatic, in [§] 1983 actions, that liability must be based on something more than a theory of respondeat superior.").

A claim against a supervisor is viable only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Id. Absent direct involvement by a supervisor—such as when the supervisor knows a subordinate will act unlawfully or adopts a policy that results in deliberate indifference to an inmate's constitutional rights—the requisite causal connection "can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." See id.; Cottone, 326 F.3d at 1360.

Plaintiff names only supervisory officials or entities, including the FDOC, as Defendants. First, the FDOC is considered an "arm[] of the state,"

not a "person" under § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 64, 70 (1989) (holding states, including state agencies and arms of the state, are "not persons within the meaning of § 1983."). See also Gardner v. Riska, 444 F. App'x 353, 355 (11th Cir. 2011)[5] (holding the Department of Corrections, a state agency, was not a person under § 1983).

Second, with respect to conduct that occurred at HCI, Plaintiff alleges no facts that would permit him to proceed against the individual supervisory officials or Corizon. To the extent Plaintiff seeks to hold Inch, Dixon, or the Wardens responsible for authorizing distribution of the COVID-19 vaccine, Plaintiff concedes he agreed to have the vaccine; it was not forced upon him. Compl. at 4. Even if a non-Defendant negligently administered the vaccine, allegations of negligence in rendering medical care do not state a claim under § 1983 as an Eighth Amendment violation. See Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Notably, Plaintiff does not contend he has been denied medical care for his alleged symptoms, including pain, trouble sleeping, and migraines, which he attributes to the vaccine. See Compl. at 3-4. He merely alleges Dixon and

---

[5] Unpublished decisions are not binding. See McNamara v. Gov't Emps. Ins. Co., 30 F.4th 1055, 1061 (11th Cir. 2022). Any unpublished decisions cited in this Order are deemed persuasive authority on the relevant point of law.

the Wardens have failed to act on his requests for "medical care <u>at a hospital</u>." <u>Id.</u> at 4 (emphasis added). An inmate may not dictate the manner in which medical care is rendered. <u>See</u> <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991) ("[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [does not] support a claim of cruel and unusual punishment.").

To the extent Plaintiff seeks to hold Dixon or the Wardens responsible for failing to act on grievances he has submitted, he should know that "filing a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied." <u>Jones v. Eckloff</u>, No. 2:12-cv-375-Ftm-29DNF, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013) (citing <u>Gallagher v. Shelton</u>, 587 F.3d 1063, 1069 (10th Cir. 2009)).

As to Corizon, Plaintiff does not allege the existence of a "custom or policy that constituted deliberate indifference to [a] constitutional right" and that caused a constitutional violation. <u>See</u> <u>Moody v. City of Delray Bch.</u>, 609 F. App'x 966, 967 (11th Cir. 2015) (citing <u>McDowell v. Brown</u>, 392 F.3d 1283, 1290 (11th Cir. 2004)). <u>See also</u> <u>Monell v. N.Y. City Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978) (holding that § 1983 applies to municipalities but liability

7

arises only when a "municipal policy of some nature cause[s] a constitutional tort").[6]

Finally, with respect to conduct that occurred at the Leon County Jail, Plaintiff has named no Defendants responsible for any alleged violations arising out of such conduct. Plaintiff is advised that any complaints he has about his conditions of confinement at that facility should be filed in the United States District Court for the Northern District of Florida.

Accordingly, it is

**ORDERED:**

1.  This case is **DISMISSED without prejudice**.

2.  The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of July 2022.

_____
BRIAN J. DAVIS
United States District Judge

---

[6] "[W]hen a private entity ... contracts with a county [or state] to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state and becomes the functional equivalent of the municipality under [§] 1983." Craig v. Floyd Cnty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting with second alteration Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997)).

Jax-6
c:   Joshua D. Franklin